WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melissa Chavez,<br><br>                Plaintiff,<br><br>v.<br><br>Reliance Standard Life Insurance Company; Matrix Absence Management Employee Benefit Plan,<br><br>                Defendants. | No. CV-13-02512-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Melissa Chavez's appeal of Defendant Reliance Standard Life Insurance's ("Reliance") determination that she does not qualify for long-term total disability benefits. (Docs. 25, 27, 28.) For the following reasons, the Court affirms the determination of Reliance.

**BACKGROUND**

Chavez worked as a Senior Long Term Disability Claims Manager for Defendant Matrix Absence Management, Inc. ("Matrix"), which provided disability benefits to its employees under its Absence Management Employee Benefit Plan (group policy number LTD 099765) (the "Plan"). According to the Plan, employees were eligible for short-term benefits for up to ninety days, long-term benefits for up to twenty four months if they could not perform the occupation for which they were hired ("own occupation benefits"), and long-term benefits past twenty four months if they could not perform any occupation

("any occupation benefits").[1]

Chavez first became disabled on July 8, 2008. She received both short-term and long-term own occupation benefits until she returned to work in October 2008. During this first period of disability, doctors discovered white matter lesions in Chavez's brain.

In May 2010, she again applied for short-term disability benefits. Later that same year, she applied for long-term benefits, and on September 16, 2010, she began to receive long-term own occupation benefits with a monthly allocation of $2558.40. As part of the process for applying for and receiving disability benefits under the Plan, Chavez indicated that she was diagnosed with rheumatoid arthritis, Sjogren's disease, and hypothyroidism. She also frequently complained of migraine headaches.

Chavez continued to receive long-term own occupation benefits until 2012. On March 12, 2012, Reliance sent a letter to Chavez informing her that the period for own occupation benefits was ending soon and that Reliance would be "gathering information concerning [her] medical condition, education, training and experience" and that this review "could potentially lead [Reliance] to conclude that" Chavez would not be eligible for any occupation benefits. (Doc. 23, Ex. 7.)

In August 2012, Reliance received an anonymous phone call, stating that Chavez

---

[1] The plan specifically states that long-term disability is based on the following:

> (1) During the elimination period and for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her regular occupation;
>
> . . . .
>
> (2) after a Monthly Benefit has been paid for 24 months, an Insured cannot perform the material duties of any occupation. Any occupation is one that the Insured's education, training or experience will reasonably allow. We consider the Insured to be Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis.

(Doc. 25, Ex. 1.)

- 2 -

was not disabled. In September and in October 2012, Reliance paid Chavez any occupation benefits under the Plan. On September 27, 2012, Dr. Debra Rowse performed an independent medical examination ("IME") of Chavez in which Dr. Rowse physically examined Chavez and also reviewed Chavez's medical history related to Chavez's 2010 disability claim. Dr. Rowse noted Chavez's diagnosed illnesses, but noted that the rheumatoid arthritis "has been quiescent over the past few years," that the Sjogren's disease is "treated systematically," and that the hypothyroidism is "controlled on medication." (Doc. 23, Ex. 12, p. 4.) Dr. Rowse also noted that Chavez "may have migraine headaches," but concluded that Chavez's failure to receive treatment "raises many questions." (*Id.*) Nevertheless, because Dr. Rowse did not review the medical records pertaining to Chavez's 2008 claim, she did not review the MRI that showed white matter in Chavez's brain. Dr. Rowse also opined that, although Chavez complained of other symptoms, there was no "objective evidence to support diagnoses of cervical radiculopathy, low back pain, multiple sclerosis, fibromyalgia or carpal tunnel syndrome" and that "[t]he level of pain and the severity of disease that Ms. Chavez alleges is not supported by the objective findings." (*Id.*)

Reliance concluded, based on Dr. Rowse's findings, that Chavez was capable of performing sedentary level work, performed a Residual Employability Analysis ("REA") on Chavez, and concluded that she could perform her prior work as a claims examiner, as well as other occupations, such as a contract representative, a customer complaint clerk, or a policyholder-information clerk. Reliance discontinued benefits to Chavez on November 8, 2012.

Chavez appealed Reliance's decision on November 20, 2012, and Reliance requested a review of Chavez's medical record by Dr. Manoj Moholkar as part of the appeals process. Dr. Moholkar made findings, similar to Dr. Rowse, that all of Chavez's diagnosed illnesses were either stable or treatable and that Chavez's non-compliance with treatment contributed to many of her symptoms. Dr. Moholkar concluded that Chavez could perform work at a sedentary level.

On June 13, 2013, Chavez submitted additional medical records, which Reliance forwarded to Dr. Moholkar for review. The additional records included the information about the white matter lesions that doctors had discovered when Chavez had initially applied for short-term benefits in 2008, updated reports from two doctors who examined Chavez in 2013, including an MRI of the lesions, more information about Chavez's migraines, and claims of memory problems. Dr. Moholkar stated that the new medical evidence did not change his earlier conclusion because the migraines did not appear to be debilitating, Chavez's claims of memory problems were not supported by objective evidence, and there was no diagnosis of demyelinating disease, a serious disease associated with white matter lesions, from the MRI taken in 2013. Reliance conducted a second REA, which confirmed the results of the earlier REA based on Dr. Rowse's findings, and on July 12, 2013, Reliance upheld its decision to discontinue benefits.

On December 11, 2013, Chavez filed the present action under section 502 of ERISA, claiming that Reliance committed several procedural errors and incorrectly interpreted the Plan in denying her benefits.

## DISCUSSION

### I.     Legal Standard

The Employee Retirement Income Security Act ("ERISA") "governs the administration of employer-provided benefit pension plans." *Metro. Life Ins. Co. v. Parker*, 436 F.3d 1109, 1111 (9th Cir. 2006). ERISA requires plan administrators, who are fiduciaries, to administer their plans "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]." 29 U.S.C. § 1104(a)(1)(D).

An ERISA plan administrator's denial of benefits challenge "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Under de novo review, no deference is given to the administrator's decision to deny benefits. *Kearney v.*

*Standard Ins. Co.*, 175 F.3d 1084, 1090 n.2 (9th Cir. 2010). *See also Firestone*, 489 U.S. at 115. "[T]he standard of review shifts to abuse of discretion," however, when discretion has been granted to the administrator or fiduciary. *Abatie v. Alta Health and Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (en banc) (citing *Firestone*, 489 U.S. at 115); *see also, Met. Life Ins. Co. v. Glenn*, 554 U.S. 105, 110–11 (2008). "[F]or a plan to alter the standard of review from the default of de novo to the more lenient abuse of discretion, the plan must unambiguously provide discretion to the administrator." *Id.* at 963. (citing *Kearney*, 175 F.3d at 1090).

"Under the deferential abuse of discretion standard of review, 'the plan administrator's interpretation of the plan will not be disturbed if reasonable." *Day v. AT & T Disability Income Plan*, 698 F.3d 1091, 1096 (9th Cir. 2012) (quoting *Conkright v. Frommert*, 559 U.S. 506, 512 (2010)). "ERISA plan administrators abuse their discretion if they render decisions without any explanation, . . . construe provisions of the plan in a way that conflicts with the plain language of the plan or rely on clearly erroneous findings of fact." *Day*, 698 F.3d at 1096. A court examines for abuse of discretion by considering "whether application of a correct legal standard was '(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.'" *Salomaa*, 642 F.3d at 676. Where an administrator acts "arbitrarily and capriciously," it "thereby abuse[s] its discretion." *Id.* at 680.

A reviewing court should weigh any conflict of interest as a factor in its review. *Glenn*, 554 U.S. at 108. Similarly, "[p]rocedural errors by the administrator are also weighed in deciding whether the administrator's decision was an abuse of discretion," but "'a single honest mistake in plan interpretation' administration does not deprive the plan of the abuse of discretion standard." *Salomaa*, 642 F.3d at 674, (quoting *Conkright*, 559 U.S. at 509). "When an administrator can show that it has engaged in an "'ongoing, good faith exchange of information between the administrator and the claimant,'" the court should give the administrator's decision broad deference notwithstanding a minor irregularity." *Abatie*, 458 F.3d at 972.

## II.     Analysis

### A.     Establishing Disability

Because plan administrators are required to administer their plans "in accordance with the documents and instruments governing the plan," so far as the plan comports with ERISA, the plain language of the plan establishes a claimant's burden in establishing disability. 29 U.S.C. § 1104(a)(1)(D). In the present case, the Plan plainly states that a claimant is required to provide "written proof" for any claim of total disability. (Doc. 25, Ex. 1.) Chavez does not contend that this written proof requirement violates ERISA. And although Chavez raises several arguments about the procedures through which Reliance handled her claim, she does not point to any opinion from her medical providers that she is unable to perform any work. Chavez seeks to offer Reliance's payments of any occupation benefits for the months of September and October 2012 as proof of her disability, but the payments provide no such evidence of disability because they were sent before Reliance finalized its initial review on November 8, 2012.[2] Thus, even if, as Chavez contends, Reliance performed some procedural irregularity in processing Chavez's claim, Chavez's failure to provide written proof of total disability provides sufficient grounds to uphold Reliance's decision to deny benefits.

### B.     Conflict of Interest and Standard of Review

Both parties concede that the abuse of discretion standard applies to this court's review of Reliance's actions. *Id.* at 963. In addition, both parties concede that Reliance has a structural conflict of interest, in that it both funds and administers the Plan. *Id.* at 966. Although this conflict does not change the standard of review, it does require a

---

[2] Although this line of reasoning hints at an estoppel argument, Chavez denies raising an estoppel claim. To the extent that she has raised an estoppel claim, it lacks merit because Chavez does not claim that she relied on representations from Reliance. *See Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996) ("[R]epresentations must be made to the employee involving an oral interpretation of the plan.").

"review informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record." *Id.* at 967.

### C. Procedural Claims

Chavez claims that Reliance abused its discretion by committing several procedural mistakes in handling Chavez's claims, including withholding relevant documents from Dr. Rowse, failing to consider the cumulative effect of Chavez's symptoms on her ability to work, using the same examiner, Dr. Moholkar, twice in the appeals process, failing to allow Chavez to respond to Dr. Moholkar's second evaluation, and improperly relying on surveillance information and the anonymous phone call.

Chavez does not provide evidence to substantiate her claim that Reliance purposely withheld information from Dr. Rowse regarding the white matter lesions that doctors discovered in 2008, but Chavez does provide evidence that Dr. Rowse did not have this information when completing the IME. With this objective evidence, it is certainly possible that Dr. Rowse would have given more credence to Chavez's complaints regarding her migraines. However, even without this evidence, Dr. Rowse did not completely discount Chavez's account of the migraines. She stated that Chavez "may have migraines" but that "her failure to follow up with a neurologist and seek treatment for her headaches raises many questions." (Doc. 23, Ex. 12, p. 4.) And Dr. Moholkar, who was given the medical evidence regarding the white matter lesions, similarly concluded that the migraines did not restrict Chavez from working at least at a sedentary level.

This distinguishes the present case from another case, *Booton v. Lockheed Medical Benefit Plan*, in which the court held that an administrator of an ERISA plan abused its discretion when it denied coverage based on lack of objective information. 110 F.3d 1461 (9th Cir. 1997). In *Booton*, the plan administrator refused to request "necessary-and easily obtainable-information" about the plaintiff's medical history, failed to offer to the plaintiff "a rational reason for its denial" of the plaintiff's claims, and allowed this error to taint its decision to deny benefits. *Id.* at 1463. In the present case, Reliance based its

original decision to deny benefits on lack of objective evidence of some of Chavez's ailments and on the stability and treatability of her other ailments. When Chavez raised the issue of the MRI showing white matter brain lesions, Reliance addressed this additional medical evidence as well by giving it to Dr. Moholkar to review as part of the appeals process. Dr. Moholkar addressed the medical evidence and concluded that, even with the evidence of white matter lesions, Chavez would still be able to perform work at a sedentary level. Thus, although evidence in the record indicates Dr. Rowse did not review a full record of Chavez's medical history that arose from her previous disability application, the error, if any, was excusable. Unlike the administrator in *Boonton*, Reliance took the medical records into account before issuing their ultimate denial, provided an explanation for denying Chavez's claims, and did not allow this error to affect the ultimate determination of Chavez's disability.

Chavez next claims that Reliance failed to consider the cumulative effect of all of Chavez's symptoms, including her cognitive impairments, to determine whether she was disabled. Again, however, Chavez on appeal does not point to a single opinion from any of her medical providers that she is unable to perform any work. It is, pursuant to the Plan, Chavez's obligation to provide "written proof" for any claim of total disability. (Doc. 25, Ex. 1.) To the extent that she alleges that she did so without any summary supporting opinion by any physician, her claim fails. Reliance provided a comprehensive review of all of Chavez's medical history. For example, one of the cognitive impairments that Chavez claims was excluded from review by the independent examiners was memory problems, which Dr. Moholkar considered and dismissed as not supported by objective evidence. In addition, Chavez has not provided any medical evidence of either confusion or fatigue, the other two conditions that she claims were ignored by the independent examiners. *See Madden v. ITT Long Term Disability Plan for Salaried Employees*, 914 F.2d 1279, 1286 (9th Cir. 1990) (holding that ERISA plan administrator did not abuse its discretion in denying benefits, in part, because the plaintiff failed to provide medical information to support his claim). To the extent that Dr. Rowse and/or

Dr. Moholkar opined that a condition either did not exist, or was under control with the use of appropriate medical treatment, they were not obliged to calculate the cumulative effects of such conditions which did not factor into Ms. Cruz's ability to work, especially when the burden of proof belonged to Ms. Chavez.

Chavez raises two claims with respect to Reliance's use of Dr. Moholkar in the appeals process. First, Chavez claims that it was procedurally irregular for Reliance to use the same physician twice in the appeals process. Second, Chavez claims that Reliance did not allow her a chance to respond to Dr. Moholkar after he submitted his second report. These claims ignore that it was Chavez's submission of supplemental medical records that caused Reliance to employ Dr. Moholkar a second time in the appeals process. Rather than an attempt to create new medical evidence that could not be contested by Chavez, these actions by Reliance are more akin to an "ongoing, good faith exchange of information between the administrator and the claimant." *Abatie*, 458 F.3d at 972 (quoting *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 635 (10th Cir. 2003)). In addition, the Ninth Circuit has noted that an administrator of an ERISA plan is not required to continually allow new evidence during appeal. *See Silver v. Executive Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 732 (9th Cir. 2006) (stating that such a system would "lead to an interminable back-and-forth between the plan administrator and the claimant").

Finally, as part of her argument that Reliance's reasons for initiating its review of her benefits was pretextual, Chavez claims that Reliance improperly relied upon the anonymous phone call and also improperly used surveillance. The Ninth Circuit has held use of surveillance may be improper if the examining physicians assign the surveillance more weight than it deserves, *see Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 633 (9th Cir. 2009), but this is not alleged here, and in any case, is not supported by the record. Chavez points to no authority suggesting that either of these two methods of obtaining information are improper *per se* in determining whether an individual is disabled or that Reliance's use of these methods in the present case was improper on its

own account.

D. **Plan Interpretation**

Chavez claims that Reliance required her to provide objective medical evidence to prove disability when this was not required by the Plan and that she was not required to seek regular treatment for all of her diagnosed ailments under the Plan. As noted above, under the abuse of discretion standard, "the plan administrator's interpretation of the plan 'will not be disturbed if reasonable.'" *Conkright*, 559 U.S. at 521 (quoting *Firestone*, 489 U.S. at 111).

It was reasonable for Dr. Rowse and Dr. Moholkar to base their conclusions on the objective medical evidence, or lack thereof, presented to them, and it was reasonable for Reliance to base its decision to deny benefits on the doctors' reports. The Plan requires claimants to provide "written proof" for any claim of total disability and reserves the right for the administrator to examine applicants "(1) physically; (2) psychologically; and/or (3) psychiatrically" for such claims as well. (Doc. 25, Ex. 1.) Thus, the plan anticipates that objective proof of an applicant's disability is required for benefits. *See Leon v. Quintiles Transnational Corp.*, 300 F. App'x 558, 561 (9th Cir. 2008) ("The plan gave [defendant] discretion to determine whether 'proof . . . [was] satisfactory for receipt of benefit payments.' That provision fairly contemplates a requirement of objective evidence where, as here, tests to confirm a diagnosis are available.")

In addition, the Plan specifically required Chavez to show that she was "under the regular care of a physician." It was, therefore, reasonable for Reliance to base its decision to deny benefits, in part, on Chavez's lack of treatment for migraines. *See Hoskins v. Bayer Corp. & Bus. Servs. Long Term Disability Plan*, 362 F. App'x 750, 752 (9th Cir. 2010) (holding that it was reasonable for ERISA administrator to conclude that the applicant was not receiving regular medical treatment because "there [was] no medical documentation in the record that establishes she received any treatment for her disabling condition during the 11-month period preceding the termination of benefits"); *Hoskins v. Bayer Corp. & Bus. Servs. Long Term Disability Plan*, 564 F. Supp. 2d 1097, 1107 (N.D.

Cal. 2008) ("[T]he record does not reflect that plaintiff received any, let alone 'regular', medical care for her disabling condition after July 29, 2004, a full year before defendant terminated her benefits, and, indeed, plaintiff does not identify herein any medical care she received beyond that discussed above.").

## CONCLUSION

Chavez has provided no written proof that she was totally disabled. In addition, she concedes that the Plan gives Reliance discretion in interpreting it and administering it. Although Reliance was working under a structural conflict of interest and Dr. Rowse was initially unaware of the medical records of the white matter lesions from 2008, it remedied this error by providing the information to Dr. Moholkar during the appeals process. Neither this nor any of the other procedural errors alleged by Chavez arise to the level of an abuse of discretion. In addition, Reliance's interpretation of the Plan was reasonable and, thus, not an abuse of discretion.

**IT IS THEREFORE ORDERED** that Plaintiff's request for relief in her Opening Brief Re: ERISA Long-term Disability Benefits (Doc. 25.) is **DENIED**.

**IT IS FURTHER ORDERED** directing the Clerk of Court to terminate this action and enter judgment accordingly.

Dated this 19th day of February, 2015.

Honorable G. Murray Snow
United States District Judge